OBERLE & HENRY v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 10, 1908.)

No. 1,770 (1,936).

CUSTOMS DUTIES (§ 34*)—CLASSIFICATION—PRESS CLOTH—CAMEL'S-HAIR—"MANUFACTURES OF WOOL"—"HAIR PRESS CLOTH."

Camel's-hair press cloth is dutiable as manufactures of "wool" under Tariff Act July 24, 1897, c. 11, § 1, Schedule K, pars. 366, 383, 30 Stat. 184, 185 (U. S. Comp. St. 1901, pp. 1666, 1668), rather than as "hair press cloth" under Schedule N, par. 431, 30 Stat. 191 (U. S. Comp. St. 1901, p. 1675).

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 34.*

For other definitions, see Words and Phrases, vol. 5, pp. 4363, 4364.]

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

There was no opinion below: The case relates to an importation at the port of New Orleans, which the importers contended had been subjected to an excessive rate of duty. The Board of United States General Appraisers affirmed the assessment, and the court below affirmed the board. In these proceedings the importers contend for a reversal of the decisions of the Circuit Court and the Board of General Appraisers.

The case involves consideration of the following provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule K, par. 383, 30 Stat. 185 (U. S. Comp. St. 1901, p. 1668):

"383. Whenever, in any schedule of this act, the word 'wool' is used in connection with a manufactured article of which it is a component material, it shall be held to include wool or hair of the * * * camel. * * *"

The prevailing and dissenting opinions filed by the Board of General Appraisers read as follows:

McCLELLAND, General Appraiser. The merchandise which is the subject of this protest is invoiced as "hair press cloth." It was returned for duty at 44 cents per pound and 50 per cent. ad valorem, and accordingly assessed by the collector under the provisions of Tariff Act July 24, 1897, c. 11, § 1, Schedule K, par. 366, 30 Stat. 184 (U. S. Comp. St. 1901, p. 1666). It is claimed that duty should have been assessed at the rate of 20 cents per square yard under the provisions of Schedule N, par. 431, 30 Stat. 191 (U. S. Comp. St. 1901, p. 1675), of said act.

The question involved has been tried out at great length; but the extensive record fails to show any material difference between the question involved and that which was presented to and fully discussed by the board in its decision G. A. 4,448 (T. D. 21,200). In that case the protest was overruled, the contention on behalf of the protestant being the same as made by the protestants in this case. No appeal was taken from said decision, however. Later, the board made a further decision (Abstract 4,605, T. D. 26,035), on the protest of E. & H. Caldwell, which, so far as shown thereby, covered practically the same issue. Said Abstract 4,605 reads as follows:

"The merchandise consisted of cloth made from camel and goat hair, used in presses for the manufacture of stearin and otherwise. It was classified as woolen cloth under paragraph 366, tariff act of 1897, and is claimed to be dutiable under paragraph 431 as 'hair press cloth.' Protests overruled on the authority of G. A. 4,448 (T. D. 21,200)."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date & Rep'r Indexes

From this latter decision an appeal was taken to the United States Circuit Court, and the decision of the board was reversed. Judge Townsend writing the decision as follows (Caldwell v. United States, 141 Fed. 487, T. D. 26,489):

"The merchandise in question consists of cloth made of hair adapted to be used in hydraulic presses. It is in fact a hair press cloth. It is so known commercially, and was so invoiced and sold. The Board of General Appraisers, however, apparently basing its decision upon evidence taken in another case as to other merchandise, adopted the language of their opinion therein and assessed the article at 33 cents per pound and 50 per cent. ad valorem, under paragraph 366 of the act of 1897, as a manufacture of wool not specially provided for. The importers protested on the ground that the cloth was dutiable eo nomine as hair press cloth, at 20 cents per yard, under paragraph 431 of said act.

"The government introduced no testimony in this case before the board. Paragraph 366 provides only for manufactures of wool not specially provided for. Paragraph 431 provides specifically for hair press cloth eo nomine. The construction given to these words by the board would seem to deprive this specific provision of all effect, inasmuch as the mats made of horsehair and cattle hair appear to be included under a separate designation. The assessment by the board would operate to impose an ad valorem duty on this cloth of between 300 and 400 per cent. The decision of the Board of General Appraisers is reversed."

The board in said Abstract 4,605 made specific finding that the cloth was "made from camel and goat hair"; and, if it were equally clear that in reviewing said decision Judge Townsend considered the question as one involving in whole or in part the rate of duty to which press cloth made from the hair of the camel is subject, we would readily accept the court's conclusion of law as governing in this case. But we note that the learned judge in his opinion makes no mention of camel's-hair, and states that the board apparently based "its decision [Abstract 4,605, supra] upon evidence taken in another case as to other merchandise." The other case referred to was G. A. 4,448 (supra), and the "other merchandise" was that involved in that case, which was concededly made of camel's-hair.

We have examined the testimony which was taken by the board in the Caldwell Case (Abstract 4,605), and find nothing in it to show that the press cloth there involved was made either in whole or in part of camel's-hair. It appears that at the close of the hearing request was made that the evidence which was the basis of G. A. 4,448 be incorporated in the Caldwell Case, "in so far as it is relative." Objection was made to the receipt of said record in evidence; and, while it does not appear from the record whether it was received, the board evidently considered the issue in the two cases identical, for the protests in the Caldwell Case were overruled on the authority of G. A. 4,448.

Samples before the courts in the Caldwell Case are in evidence in this case, and, while there is an apparent lack of identity of such samples, there is uncontradicted evidence that there is no camel's-hair in any of them. We therefore feel that the court's decision in the Caldwell Case may not be accepted as a guide to our determination here, and, unless we are to follow G. A. 4,448, the question must be considered practically as an original proposition. And to so consider it would seem inevitably to lead to the same conclusion; for we are confronted with the unmistakable fact that Congress has provided that for all tariff purposes camel's-hair shall be considered as wool (paragraphs 348, 351, and 383, Schedule K, 30 Stat. 182, 185 [U. S. Comp. St. 1901, pp. 1664, 1668]).

We do not overlook the words of Judge Townsend in deciding the Caldwell Case, supra, as follows:

"Paragraph 431 provides specifically for hair press cloth eo nomine. The construction given to these words by the board would seem to deprive this specific provision of all effect."

But to exclude camel's-hair press cloth from that special provision does not necessarily make it of no effect; for if it be assumed that the Caldwell hair press cloth was made of horsehair, it was without doubt subject to duty under that provision; and so, in Abstract 11,846 (T. D. 27,445), the board sustained

the importers' claim that horsehair press cloth was dutiable under that provision.

The generally accepted theory is that the congressional policy in constructing tariff acts has always been to place upon raw materials lower rates of duty than those fixed for the finished product or manufactured article. In other words, rates of duty, with practical uniformity, have been increased in proportion to the amount of labor expended on the article imported.

If the camel's-hair of which this article is manufactured had been imported in the raw state, there could be no question but that the wool duty would attach, for the reason, as already stated, that for all tariff purposes the word "wool" shall be held to include the hair of the camel; and it is equally clear that, in the absence of the provision for "hair press cloth" relied upon by protestants, any article made of camel's-hair would be subject to duty as a manufacture of wool; and the question therefore narrows itself down to whether the provision for "hair press cloth" is such as to make an article concededly made of wool subject to a rate of duty so low as to be entirely inconsistent with that to which the raw material out of which it is made is subject. We cannot believe that such was the congressional intent. And this is the more manifest when we consider the articles with which hair press cloth is grouped in paragraphs 429, 430, and 431, Schedule N, 30 Stat. 191 (U. S. Comp. St. 1901, p. 1675), which read as follows:

"429. Hair, human, if cleaned or drawn but not manufactured, twenty per centum ad valorem.

"430. Hair curled, suitable for beds or mattresses, ten per centum ad valorem.

"431. Hair cloth, known as 'crinoline' cloth, ten cents per square yard; hair cloth known as 'hair seating' and hair press cloth, twenty cents per square yard."

To hold otherwise would be practically to nullify, to an extent at least, the purpose of Congress in declaring the hair of the camel to be wool.

We find the merchandise involved to be a manufacture of wool, and hold it to be subject to duty as assessed. The protest is overruled, and the decision of the collector is affirmed.

SHARRETTS, General Appraiser (dissenting). This board, in Abstract 4,605 (T. D. 26,035), covering the protests of E. & H. Caldwell, found that the merchandise consisted of cloth made from camel and goat hair, and held it to be dutiable as woolen cloth, under paragraph 366 of the tariff act of 1897. The Circuit Court for the Southern District of New York reversed that decision; and it is manifest from the language used by Judge Townsend, who decided the case, that the board's finding relative to the materials entering into the fabrication of the goods was unchallenged. The learned judge, conceding that the disputed merchandise was a manufacture of wool, said in part:

"Paragraph 366 provides only for manufactures of wool not specially provided for. Paragraph 431 provides specifically for hair press cloth eo nomine. And the merchandise is in fact a hair press cloth. It is so known commercially, and was so invoiced and sold."

The argument that paragraph 431 provides only for fabrics composed of horse, cattle, or common goat hair apparently conflicts with the principle enunciated by the United States Supreme Court in Arthur v. Butterfield, 125 U. S. 70, 8 Sup. Ct. 714, 31 L. Ed. 643. In deference to the decision cited, I think the protest should have been sustained in the present case.

Walden & Webster and Hall & Monroe (Henry J. Webster, of counsel), for importers.

Albert G. McDonald, Special Asst. U. S. Atty., and Joseph W. Carroll (Rufus E. Foster, U. S. Atty., Charles D. Lawrence, Asst. Treasury Counsel, and Carroll, Henderson & Carroll, on the brief), for the United States.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. A majority of the judges are of opinion that the decree of the Circuit Court was correct, and it is therefore affirmed.